UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JANICE L. HARRIS,                          )
                                           )
        *Plaintiff*,                       )
                                           )
v.                                         )        No. 1:18-cv-00007-TAV-SKL
                                           )
COMMISSIONER OF SOCIAL SECURITY,           )
                                           )
        *Defendant*.                       )

## REPORT AND RECOMMENDATION

Plaintiff Janice L. Harris ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has moved for judgment [Docs. 15 & 19] and filed supporting briefs [Docs. 16 & 20]. This matter is now ripe. For the reasons stated below, I **RECOMMEND** that: (1) Plaintiff's motion for summary judgment [Doc. 15] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 19] be **GRANTED**; and the decision of the Commissioner be **AFFIRMED**.

## I.      ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her application for DIB on June 11, 2014 [Doc. 9 ("Tr.") at Page ID # 218-19], alleging disability beginning December 30, 2010 (Tr. 218). Plaintiff's claims were denied initially and on reconsideration at the agency level. On July 9, 2015, Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 166), which was held in Chattanooga, Tennessee on October 11, 2016 (Tr. 110-26). On January 9, 2017, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act from the alleged onset date through the date of decision (Tr. 57). The Appeals Council denied Plaintiff's request for review, making the ALJ's

decision the final decision of the Commissioner (Tr. 1-5).  Plaintiff timely filed the instant action [Doc. 1].

## II.     FACTUAL BACKGROUND

### A.      Education and Employment Background

Plaintiff was born on January 22, 1954, making her as 56 years old—considered "advanced age"—on the alleged onset date, and 61 years old—considered "closely approaching retirement age"—on her date last insured (Tr. 218).  She has a high school education and is able to communicate in English (Tr. 114).  She worked in the accounting department of her husband's software company from 1986 until 2010, when the company was sold (Tr. 114, 239).  She was trained to do payroll, data entry, and the processing of certain financial reports (Tr. 116).  The reports Plaintiff processed were turned over to the company's accountant (Tr. 116).  In her Disability Report, Plaintiff identified her past work as "Accountant/corporate treasurer" (Tr. 239).  She did not supervise anyone, and she was not a lead worker (Tr. 231).  She carried "boxes of printed documents and files everyday," which ranged in weight from 10 pounds (carried frequently), to 50 pounds (only very occasionally, not every day) (Tr. 116, 231).  She reported walking for two hours, standing for one hour, and sitting for five hours during each eight-hour work day (Tr. 231).

### B.      Medical Records

In her Disability Report, Plaintiff alleged disability due to diabetes, restless leg syndrome ("RLS"), right shoulder impingement, and "problems" in her neck, lower back, and hip (Tr. 238).  Plaintiff sets forth a detailed, factual recitation of the medical evidence [Doc. 16 at Page ID # 772-77], as does the Commissioner [Doc. 20 at Page ID # 796-802], and the ALJ (Tr. 53-56).  There is

2

no need to summarize the medical records herein, but all relevant records have been thoroughly reviewed.

### C. Hearing Testimony

Plaintiff testified at the hearing before the ALJ on October 11, 2016. Although a vocational expert ("VE") was present, neither the ALJ nor Plaintiff's attorney elicited any testimony from the VE. The transcript of the testimony from the hearing (Tr. 110-26) has been carefully reviewed.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

3

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B.     The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through September 30, 2015 (Tr. 52). At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 30, 2010, the alleged onset date (Tr. 52). At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease ("DDD") of the lumbar spine and cervical spine, status post bunionectomy of the left foot, and RLS (Tr. 52). The ALJ also noted Plaintiff had been diagnosed with diabetes and hypertension but found these conditions "imposed no more than minimal, if any, limitations in the claimant's ability to work," and were therefore not severe (Tr. 52-53). At step three, the ALJ found Plaintiff does not have an

4

impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 53).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b); except [Plaintiff] is limited to standing/walking for 4 hours during an 8-hour workday; she can occasionally perform postural activities, she cannot use ladders, ropes or scaffolding; and she must avoid concentrated exposure to wetness and hazards in the workplace." (Tr. 53). At step four, the ALJ found Plaintiff was able to perform her past relevant work as an "accountant/treasurer," as actually and generally performed, through Plaintiff's date last insured (Tr. 57). The ALJ described the job as "skilled labor at the sedentary level of physical exertion" (Tr. 57). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the alleged onset date through September 30, 2015, the date Plaintiff was last insured (Tr. 57).

## IV.    ANALYSIS

Plaintiff asserts this matter should be reversed and remanded for an award of benefits, or at least for further proceedings, for several reasons: (1) "The ALJ's description of Plaintiff's past relevant work is not supported by substantial evidence, and further violates the Social Security regulations." (2) "The ALJ's decision to assign little weight to the opinion of [Plaintiff's treating physician], when it should have been given controlling weight, is not supported by substantial evidence." (3) "The ALJ did not properly consider all of Plaintiff's severe impairments and mischaracterized important evidence, thus rendering his decision not supported by substantial evidence." [Doc. 16 at Page ID # 779, 782, 785]. I will address the arguments concerning

Plaintiff's treating physician first, followed by those concerning the severe impairments/characterization of evidence, and last, those concerning the past relevant work.

## A. Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (Citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing." 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the

court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. The ALJ's Analysis of Plaintiff's Treating Physician's Opinion

Vickie Turnbough, M.D., is Plaintiff's primary care physician, and she has treated Plaintiff since February 2012 (Tr. 405). She completed a "Medical Opinion Form Regarding Functional Limitations" on September 27, 2016 (Tr. 578-79). She listed Plaintiff's diagnoses as RLS, chronic

lower back pain, carpal tunnel syndrome, neck pain, cervical degenerative joint disease, obstructive sleep apnea, insomnia, diabetes, and two other conditions that are illegible. She opined Plaintiff could stand or walk 30 minutes at one time and for a total of only one hour per eight-hour workday, and sit for only 15 minutes or less at one time, also only up to one hour per day; Plaintiff could frequently and occasionally lift 5 pounds; and could occasionally perform other postural activities, like reaching and manipulating objects (Tr. 578). She further opined Plaintiff would require regular rest breaks because Plaintiff's "[r]estless legs keep her from being able to sit over 20 mins"; Plaintiff would need to elevate her legs for one to two hours per workday due to her back pain and neck pain; and Plaintiff would miss more than two days of work per month, also due to the RLS and neck and back pain (Tr. 578-79). She stated that Plaintiff's medications caused Plaintiff to experience fatigue and "sleepiness" (Tr. 579). Nevertheless, she characterized Plaintiff's chronic pain as moderate, rather than severe or extreme, and found Plaintiff did not need an assistive device for walking. She answered "yes" to the question of whether her opinions were based on objective medical evidence; and where she was instructed to list her physical exam findings, she wrote, "See office notes." (Tr. 578-79).

The ALJ discussed Dr. Turnbough's opinion as follows:

> On September 27, 2016, Dr. Turnbough completed a medical source statement wherein she opined [Plaintiff] is limited to sitting less than one (1) hour during an 8-hour workday, and restricted to standing/walking less than one (1) hour during an 8-hour workday. Dr. Turnbough opined [Plaintiff] must elevate the lower extremities 1-2 hours during an 8-hour workday, and would incur absences of two (2) or more days per month in the workplace.

> I have considered the opinion from Dr. Turnbough, but I find the evidence of record, as well as the clinical findings from Dr. Turnbough's own examination notes fail to support such significant restrictions in physical functioning during the period at issue.

8

> Further this assessment from Dr. Turnbough was dated a year after
> the date last insured, and for those reasons, I do not afford significant
> weight to the opinion of this provider.

(Tr. 55).

Elsewhere in his decision, the ALJ described how Dr. Turnbough ordered an MRI of

Plaintiff's cervical spine in October 2013. The ALJ described the results of the MRI as showing

"only 'moderate' degenerative disc disease and 'mild' disc bulging, without nerve root

compression or central stenosis." (Tr. 54 (discussing Tr. 583-84)). The ALJ then notes Dr.

Turnbough prescribed physical therapy which resulted in improvement (Tr. 54). The ALJ also

described how Plaintiff sought treatment from Dr. Turnbough for carpal tunnel syndrome, but only

after Plaintiff's date last insured (Tr. 55).

In considering a claim of disability, "the ALJ evaluates all relevant medical and other

evidence and considers what weight to assign to treating, consultative, and examining physicians'

opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) (citing 20

C.F.R. § 404.1545(a)(3)). A medical opinion from a treating source must be given controlling

weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic

techniques" and "not inconsistent with the other substantial evidence" in the record.[1] *Gayheart v.*

---

[1] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). The new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. As Plaintiff's application was filed and the ALJ's decision rendered before March 27, 2017, the treating physician rule applies. *See id*. at *5861; *see also* 20 C.F.R. § 404.1527. In addition, this report cites and quotes to the version of 20 C.F.R. § 404.1527 that was in effect at the time of the ALJ's decision, which, at least for the issues raised in this case, does not substantively differ from the current version.

9

*Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527). While treating physicians' opinions are often afforded greater weight than those of examining physicians, "a treating source's opinion may be given little weight if it is unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993)); *see also Gayheart*, 710 F.3d at 376 (noting that "two conditions" must be met for treating physician to automatically receive controlling weight (citing 20 C.F.R. § 404.1527(c)(2))).

When an ALJ "give[s] a treating source's opinion less than controlling weight, she must give 'good reasons' for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." *Morr*, 616 F. App'x at 211 (citation omitted). The stated reasons must be supported by the evidence in the record. *Gayheart*, 710 F.3d at 376 (citation omitted). If a treating-source opinion is not given controlling weight, the ALJ must weigh the opinion based on all relevant factors, including the nature and length of the treatment relationship, the specialization of the medical source, the consistency and supportability of the opinion, and other factors. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ is not, however, required to engage in a protracted discussion of the reasons. *See, e.g., Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reache[d] several of the factors that an ALJ must consider," and satisfied good reasons requirement. (citations omitted)).

Without providing a single citation to the administrative record, Plaintiff claims Dr. Turnbough's opinion should be given controlling weight, which would require a finding of disability; and if not, her claim should be remanded for further proceedings because the ALJ failed

10

to give the requisite good reasons for discounting the opinion. Plaintiff does identify evidence of record that she contends provides ample support for Dr. Turnbough's opinion, including a recommendation for lumbar surgery, surgeries on one of her feet and her left shoulder, degenerative changes in her right shoulder, testing of the cervical spine which showed "moderate to severe issues with neurological compromise," "significant" RLS, plus evidence showing she has "uncontrolled diabetes," obstructive sleep apnea, and an "array cardiovascular restrictions" [Doc. 16 at Page ID # 782-83]. Nevertheless, Plaintiff over or misstates certain evidence she relies upon.

Doctors at Tennessee Valley Bone & Joint performed an MRI on Plaintiff's lumbar spine in April 2014 (Tr. 374-75). Ricky Hutchison, D.O., found that the MRI revealed severe stenosis at L4-5 as well as a severe radiculopathy, and he recommended surgery (Tr. 367). As the ALJ notes, Plaintiff then got a second opinion from Paul Johnson, M.D., at the Knoxville Orthopaedic Clinic (Tr. 567-68). Dr. Johnson found Plaintiff had only a slightly restricted range of motion in her lumbar spine, and wrote: "A neurological exam of both lower extremities is notable for intact sensation to light touch. She has no weakness to manual testing." (Tr. 567). He recommended Plaintiff receive an epidural injection (Tr. 568). Plaintiff experienced improvement with injections, which the ALJ discussed in his decision, and the lumbar surgery was cancelled (Tr. 54, 376).

Plaintiff takes umbrage with the ALJ's description of an October 2013 MRI of her cervical spine [Doc. 16 at Page ID # 786], but the ALJ's description is accurate, and the MRI provides support for the ALJ's decision not to assign Dr. Turnbough's opinion controlling weight. The "Findings" section of the MRI states that there is "moderate disc space narrowing" at C6-7, which

11

is identified as the location of the "greatest" amount of degeneration (Tr. 486). Plaintiff seizes on a description of the degeneration in the "impression" section of the MRI as "at least moderate," but the ALJ's use of "moderate" rather than "at least moderate" is reasonable. The record does contain an x-ray from September 12, 2013, which was interpreted by the radiologist as showing "moderate to severe degenerative disc space narrowing at C6-7" (Tr. 489). Although the ALJ does not explicitly mention this x-ray, he still found Plaintiff's lumbar DDD was a severe impairment despite the "moderate" findings from the October 2013 MRI, suggesting that the ALJ at least considered it. In any event, the "moderate to severe" findings in the x-ray hardly show that the ALJ's decision not to assign controlling weight to Dr. Turnbough's opinion is not supported by substantial evidence, particularly in light of the milder findings from the MRI.

Plaintiff also complains about the ALJ's description of the MRI as showing "mild" disc bulging. But that is exactly how the bulging is characterized at the C6-7 level in the MRI report (Tr. 54, 486). The MRI states there are "disc bulges" of an unspecified severity at other levels, but presumably the worst bulging would be at the level with the worst degeneration, which is C6-7. Plaintiff emphasizes that the MRI describes a "disc protrusion" as "small to moderate" [Doc. 16 at Page ID # 786]. Yet, it is not clear that a disc protrusion and a disc bulge are the same condition or are equally severe, or that "mild" and "small to moderate" are significantly different descriptions. In any event, there is support in the record for the ALJ's interpretation of the MRI findings as showing "mild" disc bulging. Finally, Plaintiff argues the ALJ found "no neural compromise," and points out the MRI showed foraminal narrowing. She argues this foraminal narrowing is very significant and is a "frequent cause of surgical intervention" [Doc. 16 at Page ID # 786]. But the ALJ only found there was no nerve root compression or central stenosis, not

12

that there was no foraminal narrowing (Tr. 54). Rather than recommend surgery, Dr. Turnbough referred Plaintiff to physical therapy for her neck problems. The record reflects Plaintiff "felt great" after just one visit, with an improved range of motion, which the ALJ specifically discussed in his decision (Tr. 54, 712-13).

Plaintiff's left shoulder surgery was in 1997 (Tr. 696), and as late as 2009, she was experiencing "no symptoms" with it (Tr. 362). In September 2014, consultative examiner Raymond Azbell, M.D., found both of Plaintiff's shoulders were "normal" on examination (Tr. 432). Plaintiff complained about her *right* shoulder in 2009, and her doctor prescribed physical therapy (Tr. 362). In November 2012, she had an x-ray on her right shoulder, and that x-ray did show degenerative changes of an unspecified severity; but overall the x-ray revealed an "[i]ntact right shoulder," and "no boney abnormalities." (Tr. 418). Dr. Turnbough did not even mention any diagnosis relating to Plaintiff's shoulder in her opinion (Tr. 578-79). Indeed, less than a month prior to the x-ray, Plaintiff was examined and found to be "without joint pain, stiffness, or swelling," and could move "all four extremities without difficulty." (Tr. 425-26). Plaintiff does not cite to any treatment for her right shoulder after the 2012 x-ray, despite her many medical appointments for musculoskeletal complaints.

Accordingly, the record evidence cited by Plaintiff concerning her lumbar, cervical and shoulder issues do not indicate the ALJ erred in declining to give Dr. Turnbough's opinion significant weight.

As for the other evidence Plaintiff relies on, the following is noted: The ALJ discussed how Plaintiff had her first foot surgery in September 2014, and she had to have a follow-up surgery in February 2015 to have the original hardware removed (Tr. 55). The ALJ also discussed how in

13

March 2015, Plaintiff reported her foot was feeling much better, and her doctor found the surgical site was healing well (Tr. 55, 559-60).  After a second follow-up visit in March 2015, the record contains no further treatment of or issues with Plaintiff's feet.  At the hearing, the only difficulty Plaintiff identified with her foot was the fact that she had wear certain types of shoes (Tr. 121).

As the ALJ noted, Specialists at the Kentucky Diabetes Endocrinology Center found Plaintiff's diabetes was "easily controlled" as late as September 1, 2011, which is nine months after her alleged onset date (Tr. 52, 315).  True, Dr. Turnbough later found Plaintiff's diabetes was uncontrolled as late as September 2015,[2] and Plaintiff changed diabetes medications several times under Dr. Turnbough's care (Tr. 611).  However, the record reflects Dr. Turnbough then referred Plaintiff to an endocrinologist for her diabetes (Tr. 615), and by April 2016, her "blood sugars were improving," as Plaintiff was taking a diabetes medication regime she could tolerate, and she had "increased her exercise habits" (Tr. 599).  By September 2016, Dr. Turnbough characterized Plaintiff's diabetes as "controlled." (Tr. 587-88).  Moreover, it is unclear why Plaintiff brings up her diabetes in the context of her argument about the ALJ's consideration of Dr. Turnbough's opinion.  Other than listing it as a diagnosis, Dr. Turnbough did not mention Plaintiff's diabetes in her opinion.  The form asked her to "explain the medical reason" why Plaintiff would need rest breaks, and Dr. Turnbough only listed Plaintiff's RLS.  The form also asked for the medical reason why Plaintiff would need to miss more than two days of work per month, and Dr. Turnbough only

---

[2] I note Dr. Turnbough described Plaintiff's diabetes as "uncontrolled . . . without complication, without long-term current use of insulin" in January 2017 (Tr. 77-78), and as "uncontrolled" in December 2016 (Tr. 86).  However, these records are not exhibited, and do not appear to have been before the ALJ when he rendered his decision on January 9, 2017, and therefore are not considered for purposes of substantial evidence review.  *See Foster*, 279 F.3d at 357 ("[T]his court has repeatedly held that evidence submitted to the Appeals Council cannot be considered part of the record for purposes of substantial evidence review." (citation omitted)).

listed Plaintiff's back and neck pain, her feet, and her RLS. When asked if Plaintiff's medications caused Plaintiff to experience side effects, Dr. Turnbough only listed "[f]atigue & sleepiness from Mirapex," which Plaintiff takes for her RLS (Tr. 579, 587). If anything, Dr. Turnbough's opinion—which mentions diabetes as a diagnosis but offers no further comment about its severity or limiting effects—supports the ALJ's conclusion that Plaintiff's diabetes is a non-severe impairment (Tr. 52-53).

The record also reflects stable cardiac treatment by 2016 (Tr. 587, 590, 600). In April 2016, cardiac specialists found no "sinister pathology" in Plaintiff's heart and they concluded her blood pressure was "well controlled" (Tr. 562-63). It is true the ALJ did not mention Plaintiff's obstructive sleep apnea in his decision, but it is unclear how this condition informed Dr. Turnbough's opinion. She mentions it as a diagnosis, but never mentions it again as being a cause for Plaintiff's limitations or describes it as a contributing factor (Tr. 578-79).

This leaves Plaintiff's RLS. The ALJ discussed Plaintiff's RLS treatment records from Lexington Neurology, where Plaintiff was a patient until April 2011. The last notes indicate, consistent with the ALJ's findings, that Plaintiff had improved and was doing well with her prescribed medications (Tr. 54, 292-93). She was told to return in six months, or sooner if she needed to (Tr. 293), but the record contains no further treatment notes. Plaintiff's records from Dr. Turnbough's office reference her RLS (*see, e.g.*, Tr. 393, 400), for which she was prescribed Mirapex in December 2012 (Tr. 394). She later switched to Sinemet in August 2013 (Tr. 390). RLS is not mentioned in Dr. Turnbough's records from October 15, 2013 (Tr. 384), March 10, 2014 (Tr. 381), March 25, 2014 (Tr. 379), or June 9, 2014 (Tr. 376). It is noted again on September 8, 2014 (Tr. 624); and, on July 8, 2015, Dr. Turnbough wrote that Plaintiff's dose was doubled and

that Plaintiff's "restless legs are interfering with her ability to sleep" (Tr. 617). This appears to be the last appointment in the record prior to the expiration of Plaintiff's insured status on September 30, 2015. This single notation hardly seems to equate to an inability to sit for more than 20 minutes at a time, as Dr. Turnbough opined. Plaintiff points to a note from a January 2017 appointment, but this is well after the expiration of her insured status and indicates worsening of her RLS symptoms after a December 2016 foot surgery (Tr. 77, 63).

Accordingly, I **FIND** Plaintiff has failed to show any error with the ALJ's determination that Dr. Turnbough's opinion was not well-supported in the record. The question is, then, whether the ALJ provided good reasons for declining to give the opinion "significant weight." (Tr. 55).

The ALJ acknowledged Dr. Turnbough was Plaintiff's primary care, treating physician, recognizing Dr. Turnbough's specialty and the nature of her relationship with Plaintiff (Tr. 54; *see* 20 C.F.R. § 404.1527(c)(2), (5)). The ALJ found Dr. Turnbough's opinion was not consistent with the record as a whole, and as discussed above, Plaintiff has failed to show otherwise. 20 C.F.R. § 404.1527(c)(4). Rather, I **FIND** substantial evidence supports the ALJ's determination in this regard. The ALJ also noted Dr. Turnbough's own treatment notes conflict with her opinion. There is also substantial support in the record for this finding, at the very least with regard to the RLS existing limitations prior to Plaintiff's date last insured, as discussed above. Finally, the ALJ noted Dr. Turnbough's opinion is dated about one year after Plaintiff's date last insured. Plaintiff squabbles with this reason, but I **FIND** it was reasonable for the ALJ to consider the date of the opinion, because Plaintiff lost her insured status during the application process. Congress requires a person to be "insured for disability insurance benefits" at the time of the onset of *disability*, not the onset of a condition which may at some point in the future become disabling. *See* 42 U.S.C. §

16

423(a)(1)(A); *Garner*, 745 F.2d at 390 ("In order to qualify for an award of disability insurance benefits, Garner must establish 'the onset of disability *prior* to the expiration of his insured status." (internal quotation marks and citation omitted)).  Plaintiff claims her conditions had not changed between September 2015 (her date last insured) and September 2016 (when Dr. Turnbough gave her opinion), but Plaintiff provides no citations to the record to back up this claim.  Moreover, even if the ALJ was wrong to consider the date of Dr. Turnbough's opinion, the other reasons he discussed are well-supported and provide adequate notice to Plaintiff.

Plaintiff makes a passing argument at the end of this section of her brief that the ALJ's decision to credit the opinion of the state agency consultant, Robert Williams, M.D., is "an egregious error of common sense and, more importantly, the legal requirements of the Social Security regulations regarding the weighing of opinion evidence." [Doc. 16 at Page ID # 785]. ALJs are permitted to give great weight to the opinions of non-examining physicians like Dr. Williams if those opinions are consistent with the record as a whole.  *See Gayheart*, 710 F.3d at 379-80 ("To be sure, a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians." (citing Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *3 (July 2, 1996))); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (citations omitted).  The ALJ credited Dr. Williams' opinion because the ALJ found it consistent with the record as a whole, noting Dr. Williams is an "DDS expert review consulting physician." (Tr. 56).  Much of the evidence discussed above shows how Dr. Williams' opinion, which is similar to the RFC the ALJ ultimately adopted, is consistent with the record as a whole.  The Commissioner also points out that the record contains numerous normal or only mildly problematic exam findings and

17

improvement with conservative treatment (Tr. 376, 432-33, 478, 567, 713-14). Additionally, although Plaintiff claimed in her Disability Report that she left her job at her husband's company because of her conditions (Tr. 238), Plaintiff testified at the hearing that she left because the company was sold (Tr. 114). Thus, to the extent Plaintiff is challenging the weight assigned to Dr. Williams' opinion, I **FIND** such challenge without merit.

Accordingly, I **FIND** no error in the ALJ's consideration of Dr. Turnbough's opinion. Plaintiff's motion should be denied in this regard.

### C. The ALJ's Characterization of the Evidence

Plaintiff argues the ALJ "made several inaccurate claims concerning Plaintiff's medical condition, persuasively demonstrating he did not properly evaluate the entire record." [Doc. 16 at Page ID # 785]. Specifically, Plaintiff alleges error with the ALJ's consideration of her shoulder impairment, cervical impairment, lumbar pain, diabetes, obstructive sleep apnea, or carpal tunnel syndrome [*id.* at Page ID # 785-87].

First, Plaintiff complains about the ALJ's failure to discuss an x-ray of her shoulder taken in November 2012. However, as the Commissioner points out, the ALJ is not required to discuss each piece of data in his decision, "so long as they consider the evidence as a whole and reach a reasoned conclusion." *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006)). As discussed earlier, Plaintiff does not identify any treatment she had for her right shoulder following the x-ray, Dr. Turnbough does not mention any shoulder impairments in her September 2016 opinion, and less than a month before the x-ray was performed, Plaintiff was examined and found to be "without joint pain, stiffness, or swelling." (Tr. 525). Moreover, consultative examiner Raymond Azbell,

18

M.D., found both of Plaintiff's shoulders were "normal." (Tr. 432). The ALJ explicitly discussed Dr. Azbell's finding concerning Plaintiff's shoulder pain (Tr. 55). Dr. Azbell's exam was performed on September 16, 2014, nearly two years after the x-ray Plaintiff relies on (Tr. 432-33).

Finally, although Plaintiff argues her shoulder impairment should be considered "severe," she fails to identify any functional limitations resulting from her shoulder problems that are not already accommodated in her RFC, which is limited to light work, only occasional postural movements, and no ladders, ropes or scaffolding (Tr. 53). It is well-settled that a failure to find an impairment severe is harmless error where an ALJ finds other severe impairments and accommodates any limitations arising from the non-severe impairments in the RFC. *See, e.g.*, *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (Where ALJ considered all impairments in crafting RFC, "[t]he fact that some of Anthony's impairments were not deemed to be severe at step two is . . . legally irrelevant." (citing *Marziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Accordingly, I **FIND** the ALJ appropriately considered the evidence concerning Plaintiff's shoulders.

In support of her argument that the ALJ failed to properly consider the evidence concerning her cervical and lumbar spine, Plaintiff points to the September 2013 x-ray and October 2013 MRI (cervical) and the April 2014 MRI (lumbar) [Doc. 16 at Page ID # 786-87]. I have already addressed Plaintiff's arguments concerning these imaging studies in detail. It suffices to note that the ALJ's decision reflects a consideration of all of the relevant evidence. Moreover, as the Commissioner points out, the ALJ found Plaintiff's lumbar and cervical conditions were severe, and Plaintiff fails to point to any additional limitations she believes should have been incorporated into her RFC.

Likewise, I have already addressed the evidence concerning Plaintiff's diabetes, which supports the ALJ's finding that Plaintiff's diabetes was controllable and therefore not a severe impairment. Although the ALJ did not explicitly discuss Dr. Turnbough's evaluation of Plaintiff's diabetes as sometimes "uncontrolled," the decision reflects that the ALJ carefully considered and weighed Dr. Turnbough's opinion (which did not indicate any functional limitations arising from diabetes) and treatment records (which indicated improvement in Plaintiff's diabetes management). I **FIND** Dr. Turnbough's notes of improvement and her lack of documented functional limitations due to diabetes, combined with the finding from the Kentucky Diabetes Endocrinology Center that Plaintiff's diabetes is "easily controlled" constitute substantial evidence for the ALJ's conclusion that Plaintiff's diabetes is a non-severe impairment (Tr. 52).

As for Plaintiff's obstructive sleep apnea and carpal tunnel syndrome, the Commissioner correctly points out that Plaintiff fails to cite to any evidence showing that either condition affected her ability to work as of her date last insured [Doc. 20 at Page ID # 810]. Plaintiff simply points out that she had a sleep study done in December 2012, which did reveal severe obstructive sleep apnea [Doc. 16 at Page ID # 776 (citing Tr. 496-97)]. She was instructed not to drive "until the daytime hypersomnolence is corrected." (Tr. 497). She completed an Adult Function Report in August 2014 and indicated that she was driving short distances at that time (Tr. 252). This, combined with the fact that Plaintiff does not cite to any ongoing treatment for this condition in the record, suggests improvement. And Plaintiff herself admits her carpal tunnel syndrome diagnosis and treatment came after her date last insured, September 30, 2015 [Doc. 16 at Page ID # 787]. Plaintiff did testify that she had some symptoms before then, but the symptoms were not serious enough to prompt her to get them checked out until April/May 2016, at least seven months

later (Tr. 665).  Moreover, as the ALJ discussed in his decision, she had a successful left hand surgery in May 2016 (Tr. 55), and Plaintiff herself testified that she was supposed to have surgery on her right hand, too, but had not yet done so because the surgery "took so long" and was "scary" (Tr. 118).

Plaintiff has the burden of showing the severity of her conditions and their limiting effect on her ability to perform work functions.  *See Watters v. Comm'r of Soc. Sec.*, 530 F. App'x 419, 425 (6th Cir. 2013) ("[T]his court has consistently affirmed that the claimant bears the burden of producing sufficient evidence to show the existence of a disability." (citing *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012)) (other citation omitted)).  The ALJ's decision reflects that he thoroughly considered the relevant evidence in the record, and concluded Plaintiff failed to show any limitations beyond those provided in her RFC, a fairly reduced range of light work.  Though he did not discuss every single piece of evidence, he "consider[ed] the evidence as a whole and reach[ed] a reasoned conclusion."  *Boseley*, 397 F. App'x at 199 (citing *Kornecky*, 167 F. App'x at 507-08).  Accordingly, I **FIND** no merit to Plaintiff's argument that the ALJ mischaracterized the evidence, or that the ALJ committed reversible error by failing to find Plaintiff's shoulder problems, diabetes, obstructive sleep apnea, or carpal tunnel syndrome to be severe impairments.  Plaintiff's motion should be **DENIED** in this regard.

### D.    The ALJ's Description of Plaintiff's Past Relevant Work

At step four, the ALJ found Plaintiff capable of performing her past relevant work (hereafter, "PRW"), through the date she was last insured (Tr. 57).  The ALJ classified Plaintiff's

PRW as "accountant/corporate treasurer (DOT[3] #161.117-018)," which is considered "skilled labor at the sedentary level of physical exertion." (Tr. 57). Because Plaintiff's RFC was for a higher exertional level (reduced range of light work) with no mental limitations, the ALJ found Plaintiff was able to perform her PRW "as actually and generally performed within the regional and national economies through the date last insured." (Tr. 57). Plaintiff argues the ALJ mischaracterized her PRW, and as a result, the ALJ's determination that she was capable of performing it based on her current RFC is not supported by substantial evidence [Doc. 16 at Page ID # 779-82]. She contends this issue is critical in her case, because given her age and RFC, she would qualify as disabled under the "grids" in Appendix 2 to Subpart P of 20 C.F.R. Part 404, if she was found to be unable to perform her PRW [*id.* at 779-80].[4]

DOT code #161.117-018 provides:

**TREASURER (profess. & kin.) alternate titles: treasury representative**

Directs financial planning, procurement, and investment of funds for an organization: Delegates authority for receipt, disbursement, banking, protection and custody of funds, securities,

---

[3] The ALJ refers to the United States Department of Labor's Dictionary of Occupational Titles, 4th Ed., Rev. 1991, *available at* https://www.oalj.dol.gov/LIBDOT.HTM, last accessed Nov. 20, 2018 ("DOT"). It identifies occupations by numeric codes.

[4] As I read the relevant grid/regulations, at her age and RFC, Plaintiff would also have to lack "skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within [her] functional capacity." 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 202.00(c); *see also id.* § 201.00(e). Section 202.00, relating to the grid for light work, states that the "presence of acquired skills that are readily transferable to a significant range of semi-skilled or skilled work within an individual's residual functional capacity would ordinarily warrant a finding of not disabled regardless of the adversity of age, or whether the individual's formal education is commensurate with his or her demonstrated skill level." *Id.* 202.00(e). The Commissioner did not respond to this argument, which suggests that she concedes Plaintiff lacks the necessary transferable skills. Nevertheless, in light of my recommendation, I find it unnecessary to resolve this issue and decline to do so.

and financial instruments. Analyzes financial records to forecast future financial position and budget requirements. Evaluates need for procurement of funds and investment of surplus. Advises management on investments and loans for short- and long-range financial plans. Prepares financial reports for management. Develops policies and procedures for account collections and extension of credit to customers. Signs notes of indebtedness as approved by management. May act as CONTROLLER (profess. & kin.) 160.167-058.

As mentioned, this occupation is classified as "sedentary," which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). A sedentary occupation involves sitting, but the regulation recognizes that "a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* "Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." *Id.*

Plaintiff's description of her job at the administrative hearing was as follows:

A.      Okay. I worked in the accounting department. I have a high school education, of course. . . . [I]n order to go to work [my husband] had to train me to do the job they needed done, and that was to do some big, run the payroll and do some, the accounting work. And I did it, I was trained back years ago it was on system 36 computer, which was ancient. But anyway, I was trained to do data entry and do processing of certain reports. I ran payroll weekly and did monthly reports that was required that we needed processing to do to report the proper, you know, the hand over to the accountant to handle all the processing of the reports and stuff that needed to be done. But I printed checks and did stuff like that.

Q.      Okay. You reported lifting 50 pounds in your work history report. What did you--

A.      The only thing that relates to is like the banker boxes that you had to file stuff away and/or maybe computer paper occasionally, but not like every day.

23

Q.      Do you have any, other than this bookkeeping type activities did you have any other job duties there?

A.      No, just running the, just doing the processing of the reports and stuff.

(Tr. 116-17).

Plaintiff also described the physical demands of her past work in her July 2014 Disability Report.  She wrote that during an eight-hour workday, she walked two hours, stood one hour, and sat five hours; she wrote, typed or handled small objects for all eight hours; she "handle[d] boxes of printed documents and files everyday," carrying them anywhere from a few feet to 30 feet; and she frequently lift[ed] objects weighing 10 pounds, with the heaviest object she lifted weighing 50 pounds (Tr. 240).

The Commissioner argues any differences between Plaintiff's actual job and DOT #161.117-018 do not matter because the DOT codes represent *occupations*, each of which represents numerous actual jobs [Doc. 20 at Page ID # 813 (citing SSR 004-4p, 2000 WL 1898704 (Dec. 4, 2000)].  In support, the Commissioner points out Plaintiff identified her past work as "[a]ccountant/corporate treasurer" in her Work History Report and her Disability Report [Doc. 20 at Page ID # 813 (citing Tr. 239, 230-31)].  I am not convinced by this argument.  There are a number of duties listed in DOT #161.117-018 that Plaintiff never attested to performing, regardless of the job title Plaintiff gave herself in the reports.  The occupation seems to focus on financial planning and investments, not running automated reports and printing payroll checks.  The Commissioner does not otherwise attempt to reconcile the differences between DOT #161.117-018 and the description Plaintiff gave of her former job duties.

24

The Commissioner also argues the occupation the ALJ selected is essentially irrelevant because all the ALJ did was find Plaintiff capable of performing her previous job, "whatever name it is given." [Doc. 20 at Page ID # 814]. This is partially correct, because Plaintiff does not identify any mental limitations that would prevent her from doing her former job, and the ALJ did not find any. Plaintiff does allege exertional limitations would prevent her from doing her former job, but in this case I **FIND** the Commissioner should prevail.

Plaintiff argues her PRW "clearly . . . requir[ed] more than a sedentary level of exertion," because she reported lifting up to 50 pounds and standing and walking for a total of three hours per day [Doc. 16 at Page ID # 780]. True, these activities are not always consistent with sedentary work, 20 C.F.R. § 404.1567(a); SSR 96-9p, 1996 WL 374185 (July 2, 1996), but Plaintiff points to nothing in the record suggesting she was *required* to perform these activities as part of her job, versus doing them simply because she was able to and it was helpful. More importantly, at step four, Plaintiff bears the burden of proving not only that she is unable to perform the actual duties required by her specific former job, but also that she is unable to perform the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982); *see also Hansard v. Berryhill*, No. 3:15-CV-439-HBG, 2017 WL 1194224, at *3 (E.D. Tenn. Mar. 30, 2017) ("[A] claimant will be 'not disabled' at step four of the sequential evaluation if he is able to perform his past relevant work as he performed it *or as that job is performed in the national economy*." (citing *Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 556-57 (6th Cir. 1995)) (emphasis added)). "It is understood that some individual jobs may require somewhat more or less exertion than the DOT

description." SSR 82-61, at *2. Plaintiff essentially ignores the second part of the test.[5] She does not identify any DOT occupation she believes her PRW fits better than treasurer, nor does she argue that her past work as generally performed was anything other than sedentary.

I am mindful that courts are not permitted to rely on or engage in post hoc rationalizations to find substantial support for an ALJ's determination. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) (citing *Hyatt Corp. v. NLRB*, 939 F.2d 361, 367 (6th Cir. 1991)). Rather, it is "well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, F.3d 993, 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993) (table decision) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983)). But here, as mentioned, where Plaintiff alleges no mental impairments that would render her incapable of performing her PRW, it is the exertional classification of the PRW that is key to determining whether the ALJ's decision is supported by substantial evidence. The ALJ classified Plaintiff's PRW as sedentary as generally performed (Tr. 57), which Plaintiff has does not challenge. Accordingly, to remand for the ALJ to choose a different sedentary occupation for Plaintiff's PRW would serve no purpose. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (citing *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.8 (1969) (plurality opinion) (where "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game")).

---

[5] Plaintiff does not contend she held a composite job. Composite jobs are "jobs that require the performance of significant elements of two or more jobs, and have no counterpart in the DOT." *Burgess v. Soc. Sec. Admin.*, No. 3:15-cv-00701, 2016 WL 5800467, at *4 (M.D. Tenn. Sept. 30, 2016) (internal quotation marks and citations omitted).

Plaintiff has failed to show any error in the ALJ's determination that her PRW is sedentary as generally performed. And, for all the reasons set forth in earlier sections of this report and recommendation, I **FIND** the ALJ's assessment of Plaintiff's RFC (reduced range of light work) is supported by substantial evidence. If Plaintiff could do light work, the regulations provide she could do sedentary work, unless there were "additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time," 20 C.F.R. § 404.1567(b). The ALJ's RFC assessment reflects that he properly found the record lacked sufficient credible evidence of any such "additional limiting factors" as of Plaintiff's date last insured. Accordingly, I **FIND** no error in the ALJ's determination that Plaintiff is, or was on her date last insured, capable of performing her PRW as it is generally performed. Plaintiff's motion should be **DENIED** in this regard.

## V. CONCLUSION

For the foregoing reasons, I **RECOMMEND**:[6]

1) Plaintiff's motion for summary judgment [Doc. 15] be **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 19] be **GRANTED**; and

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).